Technologies, Inc. v. Sud-Chemie AG v. Sud-Chieme, Inc. v. Sud-Chieme, Inc. v. Sud-Chieme, Inc. Mr. Nutter, did I pronounce your name right? Yes, you did, Your Honor. All right. And you are reserved five minutes for rebuttal. Is that correct? Yes, Your Honor. All right. You may proceed. Thank you. May it please the Court, on behalf of CSP Technologies, which is a leading innovator in packaging for moisture-sensitive items like diabetes test strips that have to be kept in containers and keep moisture out of the containers. This case relates to one of CSP's patents, the 137 patent, and a patent infringement claim against Clarion de Apelli, and specifically related to the District Court's claim construction of one-term upper housing portion of the container. I'm sorry. This is a housekeeping matter. There's a continuation patent, 778 patent. Yes, Your Honor. What's the status of that patent? That patent was subject to an IPR proceeding, and recently the claims were determined to be unpatentable, and then recently a notice of appeal relating to that patent was filed as well. Okay. And there's claims there to a single-piece container, right? There is a dependent claim that specifically recites a single-piece container, and that obviously was filed after the proceedings in the cases before the Court today, where several of Clarion's arguments, including that upper housing portion, requires it be separate and distinct. So, some of those issues were addressed in that later patent. Okay. Thanks. The claim language that's at issue here today is upper housing portion of the container, and specifically the District Court erred by construing upper housing portion of the container to require it be an upper housing portion of the container that is separate and distinct from the container base. If we start with the claim language, the claim relates to a container and a lid, and one of the first elements is that the lid is attached to the container by a hinge at the upper housing portion of the container, and then the claim goes on to recite a container base. There's nothing in the claim language itself that requires that the upper housing portion be separate from the container base. It merely indicates where on the container the lid is attached by a hinge. And if we start with the plain and ordinary meaning of this phrase, upper housing portion of the container, it merely means the upper part of a container that houses the contents, these test strips or whatever the case may be, with the base and the lid. There's nothing about any of those terms that we use every day and that one of skill and the art understands. I think if we were just looking at the claim language in a vacuum, then you would have a real argument about what does it really mean to reference an upper housing portion? Should that really be deemed to be a separate element from the base of the container? But as you know, a patent is an integrated legal document, so we have to read the entire patent. And after we read the patent, do we try to figure out what does the claim language mean? And so to me, this case is all about the specifications and all the references to upper housing, upper housing portions, and even upper component, where I think there's an argument that can be made that all three of those terms are being used interchangeably by the patent drafter. So I agree with you that we need to look at the specification and talk about that. I just wanted to start with the plain and ordinary meaning, make it clear that there's nothing about any of those terms that require it to be separate and distinct, including housing. That term does not mean separate and distinct. And if we do look at the specification, we believe the specification is consistent with that plain and ordinary meaning. The patent discloses containers and lids. There's no argument that it discloses one-piece containers. It discloses two-piece containers. It uses different language to refer to those two-piece containers. It uses upper component. It uses upper housing. And when it specifically uses upper housing, it uses permissive language. It says the language that both parties continually recite to is in column four. You have a one-piece container or in another embodiment, you have a container with an upper housing portion that can be molded separately from the base. That permissive language is not any kind of exclusion or disclaimer. It's merely pointing out that you can mold part of the container separately. Just like the patent talks about the container and lid can be molded together or separately. These are plastic parts. But where does it ever say that they can be molded together? It doesn't expressly state that, Your Honor, but by the permissive language, the can be molded is not an exclusion or a disclaimer of one-piece containers with upper housing portions. Well, I guess if that was the only statement in the spec, then, again, I think maybe you might be on to something that maybe there's some equivocation there. But then there's all the other references, the upper housing and upper housing portion. It's coming right at us, for example, right in the abstract. Container assembly further comprising base portion and upper housing portion. The upper housing portion is capable of being snap fit into the base portion by employing a lip seal. I mean, to me, it looks clear that the inventor there is communicating we have two different elements of a container assembly, a base portion and an upper housing portion, and they are snap fit sealed together. The patent does repeat that same phrase that it can be molded separately a few times. I mean, this is not a case where it repeatedly and consistently goes through and says, This invention is a two-piece container with an upper housing. This is simply not one of those cases. And the fact that it uses other terminology, upper component, sometimes to refer to two-piece containers, we think weighs heavily in the fact that we did not exclusively use upper housing to refer to a separate and distinct two-piece container. There is various different language throughout the patent. And there is certainly just the fact that you describe an embodiment with a particular phrase, as a matter of law, that is not enough to impart that limitation to the claim, right? There has to be some clear definition or disclaimer. Both the district court and clarion appellee have admitted there is no definition in the patent. The patentee did not define upper housing portion. So they would have to show that there is some clear disclaimer. And the fact that there is permissive language used, that there is other language used to describe one and two-piece containers, this is not a case where there was a clear disclaimer in the specification of one-piece containers. Do you take it that our law on claim construction and understanding claim terminology in light of the specification requires, when it comes to lexicography or disclaimer, something so specific as like a glossary or a solemn vow that they are disclaiming something? I don't think our law is so rigid that it requires anything like that. In fact, there is enough case law that says that you can implicitly define something, you can communicate as a patent drafter a clear intent that, as a matter of context, doesn't require a true glossary, definitional moment, or a solemn disclaimer vow. Certainly no solemn disclaimer, Your Honor. But I think a lot more than what we have in this case. And I think if you look at the cases that Apelli has cited, those cases have repeated and consistent use, or where there actually is a definition. They said this term means X. And there certainly were no permissive language in any of the cases they cited. And I believe the I4I case that we have in our briefs is instructive, where in that case, in the specification, they said this can be edited without this content. And the court said that's not enough to say that you've disclaimed that. That's not a clear disclaimer. In cases like Thorner, where every time they used the term attachment, they talked about attaching on the outside, and they used embedded when they talked about attaching on the inside. And the court said that's not enough to read that limitation from the specification into the claim. And I think we have less than that here, Your Honor. We have a permissive statement that says something can be molded separately. They're plastic parts. One of skill in the art knows how to make these containers in one or two pieces. The crux of this invention relates to the sealing mechanism that's used to keep the contents moisture-proof. That being the case, can you address a DOE issue? Sure, Your Honor. Basically, based on the district court's construction, the district court found that there was no disclosure of any one-piece container with an upper housing portion. So if that's the case, if this court agrees with that and finds that there was absolutely no disclosure of that, then we don't believe the disclosure dedication doctrine can apply because Pfizer and the other cases say that the patent needs to disclose that as an alternative to the claim element. So we agree that one-piece containers are disclosed, but the district court's construction is premised on this whole idea that those one-piece containers do not have upper housing portions and therefore cannot be an alternative to that claim element. So what about this quote from Johnson & Johnston, the NBank opinion, that says, when a patent drafter discloses but declaims subject matter, dot, dot, dot, this action dedicates that unclaimed subject matter to the public. I take your argument to be that this disclosure dedication doctrine is very, very limitation element specific, swapping some disclosed but unclaimed element for a claimed element, one for one. But what I just read from Johnson & Johnston seems to talk a little more broadly than that in terms of conceptually claimed subject matter versus unclaimed subject matter. And if that's the case, then what we have here is perhaps a claimed embodiment and then an unclaimed embodiment. I think in Johnson & Johnston, it was very clear that the claim element was aluminum, that it was the substrate made of aluminum. And in that patent, it specifically disclosed alternatives to aluminum. So aluminum is preferred, but you can use these other metals for this substrate. And in that case, there was a clear disclosure of an alternative to that claim element. And this court's later cases made that clear, that when we're looking at this disclosure dedication doctrine, you're supposed to look at that specific claim element and is there an alternative to that. So I think the later cases have made clear what Johnson & Johnston held. But we really think that those issues should never be reached because it's a claim construction issue and that the proper construction of upper housing portion should be given its plain and ordinary meaning and that this is not a case where a limitation from the specification should be read into the claim. I think that would be a dangerous precedent to set and would expand the law in that area. All right. Thank you very much. You went two minutes into your rebuttal, but I'll restore that. Thank you, Your Honor. Morning, Your Honor. Mr. Sullivan. May it please the Court. I think when one of ordinary skill in the art looks at the claim term here, upper housing portion, and reads that claim term in light of the intrinsic evidence and here especially the specification, I think it's clear that upper housing portion is a separate component from the base in a two-piece container. I agree with the Court that if we were just looking at the claims in a vacuum, there would be more credence, I think, to CSP's argument. But I think you have to look at these claims, especially this claim term upper housing portion, in light of that specification. The specification is clear. It says it repeatedly in the abstract, in the summary of the invention, and in the detailed description. When you talk about an upper housing portion, you're using that term in a two-piece container where it's a separate piece from the base. But both in the summary and in the detailed description, isn't there a sentence there that says that the upper housing portion and the base can be molded separately? And so what are we supposed to make of that when it says can be molded separately? That suggests it also can be molded a different way, maybe together. Sure, referring to the permissive language argument that CSP makes. Yeah, it's a good point. So when you look at the specification, okay, we've got to look at the first sentence. Let's just take the detailed description. I'll just read here from column four, lines four through nine. It says in one environment, the containers can be formed as a single closed unit with the hinge joining the lid portion, the container portion. In yet another environment, the container assembly comprising the base and upper housing portion can be molded separately. So that's giving you two permissive alternatives there. You can do it as a one-piece container. No mention of upper housing portion with respect to that one-piece container. Just a one-piece container. Or you can have a two-piece container where those two parts are molded separately. What the specification never says, and I think it distinguishes the cases cited by CSP on this argument, the specification never says that they can be molded jointly or that the upper housing and the base can be integrated. So we don't think the fact that it uses the words can be here in the specification make it any less clear that when you're talking about an upper housing portion, you're referring to a two-piece container. CSP's premise is its argument that upper housing portion, the planning and ordering meaning of that, is somehow a location or an area. I think what they're doing is really reading that word housing out of the claims. And that is a claim term. It says upper housing portion. It's a term that was added to this continuation in part. They added the language for upper housing portion to this patent. It has a clear intent on behalf of the patentee that when you're talking about upper housing portion here, when you look at this patent, one or more skill in the art walks away from the understanding that that's a two-piece container. And we think that's pretty clear. You can't get rid of the word housing in the claim term. I think the fact, too, that it was added to this continuation in part, it wasn't in the parent case, the 720 patent, which there they just said that the hinge of the lid, the lid was connected to a hinge and the hinge was connected to the container. I think their 778 patent, which is the child patent, the continuation, which is also up on appeal here before the court from the IPR. I think in that case, their claims, again, talk about the lid being disconnected to the container. They don't use the words upper housing portion. Are you saying the parent disclosure did not disclose a two-piece container assembly? No, it did. You're correct, Your Honor. It called it an upper compartment. They used a different term, but those terms are really interchangeable. The only real difference between upper compartment and upper housing portion is that the fact that when they added upper housing portion to the 137 patent, it had a snap-fit connection to the base. The upper component that was in the original parent application, the 720 patent, that was joined by welding, those two pieces. But they were both two pieces, and I think those environments are all consistent. If you're talking about upper component, upper housing portion, you're in a two-piece container environment. Those pieces, upper component and upper housing portion, are not part of a one-piece container. When you look at their figure 10, you look at the description of figure 10, that's a one-piece container. It does not mention upper compartment or upper housing as being part of that embodiment. Just talking a little bit about the doctor equivalent. To sum up that point, we think that the district court came up with the correct construction here. Viewed the claims for upper housing portion in the context of the intrinsic evidence, especially the specification, and correctly construed that to be a two-piece container where the upper housing portion is a separate and distinct piece from the base. We also think the district court's grant of summary judgment was the right decision. As it's in the record, CSP has conceded there's no literal infringement here under the court's construction. The argument was under doctrine of equivalence. We think that the disclosure dedication rule and the vitiation doctrine apply here and preclude application of the doctrine of equivalence on the accused product, which is a one-piece container. Just talk for a minute about the disclosure dedication rule. I think there it's pretty simple. When you have two alternative embodiments disclosed, you claim one. The unclaimed but disclosed embodiment can't be covered by the doctrine of equivalence. Has there ever been a case where this court has held that the disclosure dedication rule applied outside the context of just replacing a single element with a substitute element? Like Johnson & Johnson with that aluminum and then some other material case. Then there's another case where disclosure dedication was applied, but again it was literally removing one word and inserting another word that was disclosed but not claimed. This fact pattern feels a little different than that. I don't think there's a specific case that comes after our exact situation here. I think we are, though, more aligned with the Johnson & Johnson case in that you haven't expressed disclosure in the specification of alternatives. These are two alternative embodiments. I just read it to the court before in column four, lines four through nine. In one embodiment, you can have a single closed one-piece container, no mention of it being an upper housing there. In the very next sentence, it says, in yet another embodiment, you can have a two-piece container with an upper housing separate from a base. I think the analogy we pointed out in our brief that two shoes are alternatives, one being an Oxford with laces and one being a loaf without, you don't have to have corresponding structure between those to have those be defined as alternatives. They are expressly defined in this patent specification as alternatives. I don't think that the FISER case and the other case cited by CSP stand for any proposition that you have to use magic language or magic words such as alternative or that you have to include everything in one sentence and have it be just a corresponding replacement in order for the disclosure dedication rule to apply. Here again, we're talking about two alternatives clearly disclosed in two adjacent sentences. They claim the upper housing. I'm just trying to think. If you had been the patent drafter and you wanted to cover both embodiments, would you just delete the phrase, an upper housing portion, so that the limitation would have just said the lid is attached by a hinge to the container? Exactly, Your Honor, and that's what they did. That's what I was referring to. That's what they did in the 720 parent, and that's what they did in the 778 continuation. It's not unlike what's mentioned in the Johnson & Johnson case where they actually say, look, you're not prejudiced here. You can go pick up that unclaimed but disclosed embodiment, that alternative embodiment. You can pick that up in a continuation. That's exactly what CSP did. They've asserted that continuation against us, and that's for another matter, so I won't get into that case, but they actually did exactly that. They removed that limitation of upper housing portion. They also went a step further, and in a dependent claim, they specifically stated that it was a one-piece container. So they've covered in both of their claims, or all their claims, I should say, in that patent. I think the officiation doctrine also applies here. I think we're talking about fundamental opposites. I think that to use the doctrine of equivalence to stretch this claim here, which covers a two-piece configuration, to also cover a one-piece configuration, I think those are fundamental opposites, and I think by using the doctrine of equivalence to do that, I think you wind up vitiating. Do we end up with substantially the same use and purpose? What difference does it make if there's a hinge there or not, the cap seals, whether it's separate from the container or not? Well, I don't think it has to do with the hinge, Your Honor. I think it has to do with whether or not the container, which is the lower portion, there's a lid, and the lid is attached to the container by a hinge. I think we're talking about that container actually being one or two pieces, and we think those are fundamental opposites here. Whether it's a multi-part container or an integral container that's just one piece, if the claims cover both through the doctrine of equivalence, there's absolutely no reason or would render this upper housing portion limitation meaningless. What if the accused product was a three-piece container? Would you be standing here saying it's vitiation to have a claim that covers it, that's directed to a two-piece assembly? By trying to stretch to a three-piece assembly? No, I don't think that adding extra pieces is going to help you on infringement. If you still have the upper housing and the base as separate pieces, I think you would still infringe the claim. Does that make sense? The fact that you add an additional piece is not going to get you out of infringement, that situation. So I think the claim requires at least two pieces. That's another way to phrase that. So it's in the multi-component world of containers. That's what the claim is talking about here. Because what you're asking for is essentially a rule of law that vitiation applies here, are you saying that any time two claim elements are integrated into one element in the accused product, you can never have doctrine of equivalence because you vitiated the recitation and the claim of the otherwise integrated element being divided into two elements? Well, if the claim or the specification told you clearly that the coverage here is for a two-piece container, then yes, I would say a two-piece container can never be the same as a one-piece container in that situation. If it is, then the two-piece container scope of that claim would have absolutely no meaning at all. And I don't think that's appropriate. Now, if it wasn't clear from the scope of the claim that it had to be two pieces, then yeah, I guess an argument could be made that you could make the pieces separate or equivalent would be to make them together or integrate them. But I think here the case is a little different. I think the scope of the claims is consistent with the specification is that it has to be two pieces. Okay. Thank you, Your Honor. Thank you. A few quick points, Your Honors. First, Apelli raised this issue of can be and that the specification uses the term it can be molded separately. That is just not an expression of an intent to limit that term. You're giving that it can be molded separately or it can be molded together. You're talking about one-piece containers and two-piece containers. I just don't think that's a clear expression to disavow or disclaim those embodiments. Apelli also raised the term housing that it has to be given meaning. We agree with that. It should be given its plain and ordinary meaning. But nothing about term housing requires that it be separate. So there's nothing about the meaning of that term housing that requires it be a separate element. And finally, we talked a little bit about what could the claim drafter have done. Well, the claim drafter could have written in that we want a two-piece container or we want a separate upper housing. They didn't do that. To the extent the prosecution history is relevant, it shows that they amended the claims in the 137 patent to remove other language to make it clear that it would cover one-piece containers. During prosecution, the applicant removed the language top container surface and this Claim 1 that we're dealing with now and pointed to Figure 10, which is a one-piece container, as support for that claim. And during claim construction, that was another issue that was before the court and Clarion argued this top container surface language makes it clear that these claims only cover two-piece containers. And the district court disagreed with that and said, no, they removed that language. They pointed to a one-piece container. So I think to the extent the prosecution history is relevant, it shows that the applicant intended to cover one-piece containers and that this language should not be construed to exclude those embodiments. That's all I have, Your Honor. Thank you very much. Thank you.